**Marquis Aurbach Coffing**
Terry A. Coffing, Esq.
Nevada Bar No. 4949
Chad F. Clement, Esq.
Nevada Bar No. 12192
Jared M. Moser, Esq.
Nevada Bar No. 13003
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
tcoffing@maclaw.com
cclement@maclaw.com
jmoser@maclaw.com
*Attorneys for Richland Holdings, Inc.*
*d/b/a AcctCorp of Southern Nevada and*
*RC Willey aka RC Willey Financial Services*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DANY GERALDO and WENDOLY GUZMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA, a Nevada Corporation; RC WILLEY aka RC WILLEY FINANCIAL SERVICES and ATTORNEY JEROME R. BOWEN, Esq.,<br><br>Defendants. | Case No.:2:17-cv-00015-JCM-PAL<br><br>**DEFENDANT RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT** |

Defendant Richland Holdings, Inc. d/b/a AcctCorp of Southern Nevada ("AcctCorp"), by and through its attorneys of record, the law firm of Marquis Aurbach Coffing, and pursuant to Fed. R. Civ. P. ("FRCP") 12(b)(1), 12(b)(6), and 12(e), hereby file their Motion to Dismiss or, Alternatively, Motion for More Definite Statement ("Motion").

/ / /

/ / /

/ / /

/ / /

MAC:14665-005 2998399_1 1/29/2017 3:31 PM

This Motion is based upon the following Points and Authorities, all pleadings and papers on file herein, and any oral argument allowed by this Court at the time of hearing on this matter.

Dated this 30th day of January, 2017.

MARQUIS AURBACH COFFING

By /s/ Jared M. Moser
Terry A. Coffing, Esq.
Nevada Bar No. 4949
Chad F. Clement, Esq.
Nevada Bar No. 12192
Jared M. Moser, Esq.
Nevada Bar No. 13003
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for Richland Holdings, Inc.
d/b/a AcctCorp of Southern Nevada and
RC Willey Financial Services*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs Dany Geraldo and Wendoly Guzman (collectively, "Plaintiffs") assert claims that allegedly arose more than two (2) years before the Complaint in this case [ECF No. 1] was filed, and before Plaintiffs filed a voluntary petition for Chapter 13 bankruptcy, which ultimately resulted in full discharge of Plaintiffs' liability to their creditors.[1] Plaintiffs, however, failed to identify the claims they now assert in their bankruptcy schedules, so they are judicially estopped from asserting these claims now. In addition, Plaintiffs' claims for violations of the Fair Debt Collection Practices Act ("FDCPA") and their counterpart Deceptive Trade Practices ("DTP") and abuse of process claims are also barred by the FDCPA's one-year statute of limitations. In addition, as Plaintiffs now seek to

---

[1] Although AcctCorp disputes certain of the allegations in the Complaint, it understands that the allegations are to be taken as true in the Court's consideration of the instant Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

collaterally attack the damages sought and awarded in the underlying case of *Richland Holdings, Inc. d/b/a AcctCorp of S. Nev. v. Geraldo et al.*, No. A-14-702297-C, Eighth Judicial Dist. Court of Nevada (the "State Court Action"), this Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine to consider Plaintiffs' claims. Plaintiffs' claim for abuse of process is also inherently flawed by their own admission that they owed a debt upon which AcctCorp legitimately sought collection. Naturally, because Plaintiffs' other causes of action fail, so too does their claim for civil conspiracy.

Even if Plaintiffs' factual allegations are taken as true and all inferences are made in their favor, the Complaint still fails to state a claim upon which relief may be granted, and this Court lacks subject-matter jurisdiction over the claims by which Plaintiffs seek to collaterally attack the damages awarded in the State Court Action. Therefore, AcctCorp respectfully requests that this Court dismiss the Complaint in its entirety and with prejudice.

## II.  STATEMENT OF FACTS

This Court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that documents filed in separate litigation are "readily verifiable and, therefore, the proper subject of judicial notice") (citation omitted); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.") (citation and internal quotation marks omitted).

The relevant facts surrounding this lawsuit are straightforward and are as follows:

/ / /

/ / /

/ / /

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

## PLAINTIFFS' UNDERLYING DEBT AND DEFAULT

1. Plaintiffs entered into a valid and binding contract with Defendant RC Willey Financial Services ("RCW") on or about January 19, 2001 for the procurement of retail merchandise.[2]

2. Plaintiffs started to incur charges relating to the contract on or about January 19, 2001 and became delinquent in their account by failing to maintain their account through regular payments, under the terms of their contract.[3]

3. Plaintiffs became delinquent on or about January 7, 2013, with an account balance of $8,080.38, and a contractual collection fee of $4,040.19 was added for a total of $12,120.57, with interest accruing thereon at the contractual rate of twenty-four percent (24%) per annum.[4]

4. After Plaintiffs became delinquent, Plaintiffs account was assigned to AcctCorp, which began its efforts to recover the debt, including the filing and prosecution of the State Court Action, which commenced on or about June 11, 2014.[5]

5. The State Court Action ultimately resulted in the entry of an Order for Default Judgment, which was entered on October 13, 2014, and filed on October 20, 2014.[6]

## PLAINTIFFS' BANKRUPTCY PROCEEDINGS

6. Plaintiffs filed a voluntary petition for Chapter 13 bankruptcy on or about November 19, 2014.[7]

---

[2] State Court Action, Application for Default J., Ex. 1 (*Aff./Decl. of Custodian of Records, Bryn Wicks*), at ¶ 3 (filed Sept. 22, 2014), a complete copy of which Application is attached hereto for the Court's reference and convenience as **Exhibit 1**.

[3] *Id.*, at ¶ 4.

[4] *Id.*, at ¶ 5.

[5] State Court Action, Compl., (filed June 11, 2014), a copy of which is attached hereto for the Court's reference and convenience as **Exhibit 2**.

[6] State Court Action, Order for Default J., (filed Oct. 20, 2014), a copy of which is attached hereto for the Court's reference and convenience as **Exhibit 3**.

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

7. In Plaintiffs' "Schedule B," listing their personal property, under the section identifying "[o]ther contingent or unliquidated claims of every nature," Plaintiffs identified "None."[8]

8. At no time throughout their bankruptcy proceedings did Plaintiffs amend their Schedule B to reflect, nor otherwise identify in any manner whatsoever, the claims that they now raise in this litigation, despite amending their Schedule F to identify both AcctCorp and RCW as creditors holding unsecured, nonpriority claims.[9]

9. Plaintiffs' debt was entirely discharged on November 17, 2015.[10]

### PLAINTIFFS BRING THE INSTANT LITIGATION IN BAD FAITH

10. On January 3, 2017, Plaintiffs initiated the instant lawsuit to assert claims that they omitted from their bankruptcy schedules in order to collaterally attack the bases for damages that were fully and finally adjudicated more than two (2) years earlier.[11]

As argued below, Plaintiffs are absolutely prohibited from maintaining the instant lawsuit.

### III. LEGAL STANDARDS

#### A. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Court should dismiss any cause of action that fails to state a claim upon which relief can be granted. FRCP 12(b)(6); *see also N. Star Int'l. v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, the district courts do not consider any material beyond the pleadings when ruling on a motion to dismiss pursuant to FRCP 12(b)(6). *See*

---

[7] *In re Geraldo*, No. 14-17701-btb, D. Nev. Bankr., <u>Voluntary Petition</u> (filed Nov. 19, 2014), a copy of which is attached hereto for the Court's reference and convenience as **Exhibit 4**.

[8] *See id.*, at 16 ¶ 21.

[9] *See generally In re Geraldo*, Docket, a copy of which is attached hereto for the Court's reference and convenience as **Exhibit 5**; *see also id.*, Am. Schedule F [Bankr. ECF No. 9] (filed Nov. 19, 2014), at 1, 7, a copy of which is attached hereto for the Court's convenience as **Exhibit 6**.

[10] *See* Ex. 5.

[11] *See* Compl. [ECF No. 1], on file herein.

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990) (citation omitted). The Court may, however, take judicial notice of matters of public record when considering such a motion. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (citation omitted), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166 (1991); *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings.") (citations omitted).

### B. MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

Under FRCP 12(b)(1), a party may assert a defense of lack of subject-matter jurisdiction by motion. "If the court determines *at any time* that it lacks subject-matter jurisdiction, the court *must* dismiss the action." FRCP 12(h)(3) (emphases added). As emphasized, dismissal in this case is mandatory, not permissive or discretionary.

"The *Rooker–Feldman* doctrine has evolved from the two Supreme Court cases from which its name is derived." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (2004) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983)). "*Rooker–Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Id.* (citation omitted). "If a plaintiff brings a de facto appeal from a state court judgment, *Rooker–Feldman* requires that the district court dismiss the suit for lack of subject matter jurisdiction." *Id.*; *see also Salman v. Rose*, 104 F. Supp. 2d 1255, 1258 (D.Nev. 2000) (recognizing that "the *Rooker–Feldman* doctrine dictates that federal courts lack subject matter jurisdiction, even if a State court judgment was erroneous or unconstitutional") (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548 (7th Cir. 1999)).

To the extent Plaintiffs' Complaint now challenges the damages sought and awarded in the underlying State Court Action, and the bases for the same, this Court lacks subject-

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

matter jurisdiction. AcctCorp posits that the entire Complaint is based on such challenges, so this Court should dismiss the Complaint in its entirety and with prejudice.

### C. MOTION FOR MORE DEFINITE STATEMENT

FRCP 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. ... "

## IV. LEGAL ARGUMENT.

### A. PLAINTIFFS' ARE JUDICIALLY ESTOPPED FROM ASSERTING ANY OF THEIR CLAIMS AFTER FAILING TO IDENTIFY THEM IN THEIR BANKRUPTCY SCHEDULES.

Plaintiffs did not identify any of their instant claims as contingent assets in their bankruptcy, even though such claims, if legitimate, would have arisen prior to filing a bankruptcy petition and before the resulting reorganization plan or discharge. Consequently, Plaintiffs are legally barred from asserting any of these claims, which must all be dismissed with prejudice.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600–601 (9th Cir. 1996) and *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). Courts "invoke[] judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Id.* (citation, alteration, and internal quotation marks omitted).

The U.S. Supreme Court has identified three factors that this Court may consider in determining whether to apply the doctrine of judicial estoppel, although all need not be

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

established: (1) whether Plaintiffs' later position is "clearly inconsistent with its earlier position"; (2) whether Plaintiffs "succeeded in persuading a court to accept [their] earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether Plaintiffs would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 782-83 (citations and internal quotation marks omitted). "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Id.* at 783. Because all of these factors are satisfied, Plaintiffs must be prohibited from asserting any of their claims in this action.

    1. **<u>Plaintiffs' Assertion of Claims in the Instant Lawsuit is Clearly Inconsistent With Their Earlier Position Taken in Their Bankruptcy Proceedings that No Claims Existed, by Which the Bankruptcy Court was Persuaded to Accept Plaintiffs' Reorganization Plan and Discharge Their Debt.</u>**

The Ninth Circuit has expressly held, consistent with decisions from federal Courts of Appeal around the country, that, "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised … in the debtor's schedules or disclosure statements." *Hamilton*, 270 F.3d at 783 (citing *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (holding that failure to give notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estops the debtor from prosecuting that cause of action); *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936 (2000) (holding that a debtor is barred from bringing claims not disclosed in its bankruptcy schedules because "[t]he duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action"); *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 572 (1st Cir. 1993), *cert. denied*, 510 U.S. 931, 114 S.Ct. 344 (1993) (holding that a debtor who obtained relief on the representation that no claims

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

existed cannot resurrect such claims and obtain relief on the opposite basis); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495 (1988) (holding that a debtor's failure to list potential claims against a creditor "worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect," and debtor is estopped by reason of such failure to disclose)). Plaintiffs' conduct in this case is exactly what governing law from around the country unquestionably forbids.

The Ninth Circuit, in *Hamilton*, noted that the plaintiff "failed to list his claims against [the defendant] on his bankruptcy schedules, and then later sued [the defendant] on the same claims." *Hamilton*, 270 F.3d at 784. The court recognized that "the bankruptcy court relied on his failure to include his claims against [the defendant] as assets when it discharged his debts ... " *Id.* The court went on to cite its decision in *Hay*, wherein the Ninth Circuit "held that a debtor who failed to disclose a pending claim as an asset in a bankruptcy proceeding where debts were permanently discharged was estopped from pursuing such claim in a subsequent proceeding." *Id.* (emphasis omitted).

All action alleged by Plaintiffs in this case happened no later than the date that the Order for Default Judgment was filed in the underlying proceedings, which occurred on or about October 20, 2014.[12] Plaintiffs' voluntary petition under Chapter 13 of the Bankruptcy Code was filed approximately one month later, on November 19, 2014.[13] This Court may take judicial notice that Plaintiffs' Schedule B, identifying Personal Property, including "[o]ther contingent or unliquidated claims of every nature" indicated "None."[14] Plaintiffs' debt was discharged on November 17, 2015, and at no time during the pendency of the

---

[12] *See* Ex. 3.

[13] *See* Ex. 4.

[14] *See id.*, at 16, ¶ 21.

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

bankruptcy proceedings did Plaintiffs ever amend their Schedules to identify the claims that they now assert, despite even identifying the creditors named herein.[15]

Based on the chronology of events surrounding the alleged accrual of Plaintiffs' claims and the filing, discharge, and termination of their bankruptcy, and given (1) Plaintiffs' failure to identify the instant claims in their bankruptcy schedules and (2) the library of binding authority from the Ninth Circuit and the U.S. Supreme Court, Plaintiffs must be forbidden from asserting the claims they now bring.

Therefore, AcctCorp respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.

### B. PLAINTIFFS' CLAIMS ARE FURTHER BARRED BY THE ROOKER-FELDMAN DOCTRINE AND PRINCIPLES OF ISSUE AND CLAIM PRECLUSION.

#### 1. Plaintiffs' Challenge of the Damages Sought by and Awarded to AcctCorp is Prohibited by the Rooker-Feldman Doctrine.

Plaintiffs' argument as to damages in the State Court Action should have been raised in the earlier proceedings but was not. Governing law prohibits Plaintiffs from asserting such a collateral challenge to a final state court judgment in this subsequent federal litigation.

"If issues presented in a federal suit are 'inextricably intertwined' with issues presented in a forbidden de facto appeal from a state court decision, *Rooker–Feldman* dictates that those intertwined issues may not be litigated." *Kougasian*, 359 F.3d at 1142 (citing *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. 1303); *see also Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481-82, 102 S.Ct. 1883 (1982) ("It has long been established that [28 U.S.C.] § 1738 does not allow federal courts to employ their own rules of res judicata [or claim preclusion] in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from

---

[15] *See* Ex. 5.

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

which the judgment is taken.") (citation omitted); 28 U.S.C. § 1738 (dictating that federal courts must give "full faith and credit" to state court judgments).

Here, Plaintiffs' claims all relate to alleged "Collection Fee Violations," "§ 1692(g) Violations," and "Interest Fees Violations," which are inextricably intertwined with the damages award in the underlying State Court Action because Plaintiffs argue that the damages awarded were legally erroneous or otherwise not permitted by law.[16] Therefore, pursuant to *Rooker*, *Feldman*, and numerous decisions from the Ninth Circuit, including *Kougasian*, this Court lacks subject-matter jurisdiction and must dismiss Plaintiffs' entire Complaint with prejudice.

### 2. Notwithstanding the Applicability of the Rooker-Feldman Doctrine, Plaintiffs' Claims are Further Prohibited by the Principles of Issue Preclusion and Claim Preclusion.

In determining the preclusive effect of a State court judgment, federal courts "apply the forum state's law" relating to preclusion. *In re Plyam*, 530 B.R. 456, 462 (9th Cir. BAP 2015) (citations omitted).

Under Nevada law, claim preclusion is "a rule which precludes the parties from relitigating what is substantially the same cause of action." *Clark v. Clark*, 80 Nev. 52, 55-56, 389 P.2d 69, 71 (1964) (citation omitted). "On the other hand, [issue preclusion] … may apply even though the causes of action are substantially different, if the same fact issue is presented. As distinguished from [claim preclusion], it is the record of the former case rather than the judgment that stands as a barrier to relitigation." *Id.* at 56, 389 P.2d at 71 (footnote reference omitted); *see also Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1051, 194 P.3d 709, 711 (2008) (adopting the term "issue preclusion" to replace the term "collateral estoppel" and "claim preclusion" to replace the term "res judicata").

The *Clark* court explains the history of these principles throughout Nevada jurisprudence noting that, in each, "the facts essential to establish the cause of action

---

[16] *See* Compl. [ECF No. 1], at ¶¶ 14-19.

pleaded in the first case were the same facts needed to prove the cause of action alleged in the later case, the prior record precluded relitigation." *Id.* n.2 (citing *Miller v. Miller*, 54 Nev. 44, 3 P.2d 1069 (1931), 54 Nev. 165, 11 P.2d 1088 (1932); *Silverman v. Silverman*, 52 Nev. 152, 283 P. 593 (1930) and *Vickers v. Vickers*, 45 Nev. 274, 199 P. 76 (1921), 202 P. 31 (1921)).

In this case, claim preclusion of what would have been compulsory counterclaims, as well as issue preclusion, both apply to bar Plaintiffs' causes of action in this matter.

### a.   **Plaintiffs' claims are barred by claim preclusion.**

Pursuant to Nevada Rules of Civil Procedure ("NRCP"), Rule 13, which applied and governed in the underlying State Court Action,

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

NRCP 13(a).

Because all of Plaintiffs' claims in this matter arose "out of the transaction or occurrence that [wa]s the subject matter of [Defendants'] claim [in the underlying State Court Action] and [did] not require … the presence of third parties of whom the court cannot acquire jurisdiction," those claims were compulsory counterclaims, effectively resolved by adjudication of the underlying proceeding. *See Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 836, 963 P.2d 465, 474 (1998) (holding that compulsory counterclaims not previously brought are barred by claim preclusion).

Therefore, Plaintiffs are now prohibited by the doctrine of claim preclusion from bringing the claims they now assert, and their entire Complaint must be dismissed with prejudice.

### b.   **Plaintiffs' claims are barred by issue preclusion.**

"The doctrine of [issue preclusion] is based upon the sound public policy of limiting litigation by preventing a party who had one full and fair opportunity to litigate an issue

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

from again drawing it into controversy." *Thompson v. City of N. Las Vegas*, 108 Nev. 435, 439-40, 833 P.2d 1132, 1134-35 (1992) (citation omitted). Under Nevada law, issue preclusion requires that four factors are satisfied:

> (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated.

*Five Star*, 124 Nev. at 1055, 194 P.3d at 713 (alteration, internal quotation marks, and footnote reference omitted).

In this case, Plaintiffs raise an issue of the propriety of certain elements of damages in the underlying proceeding, as relate to the enforceability of relevant contract provisions in the State Court Action.[17] These exact issues were raised in the State Court Action.[18] Therein, the State court entered a ruling and final judgment on the merits.[19] Indisputably, the parties to this case and the State Court Action were not only in privity, they were identical.[20] Moreover, the issue was actually and necessarily litigated in that the fees and interest which Plaintiffs now challenge were adjudicated and included in the final judgment amount.[21]

Therefore, Plaintiffs are prohibited by the doctrine of issue preclusion from attempting to re-litigate the issues adjudicated in the State Court Action, and their instant Complaint [ECF No. 1] must be dismissed with prejudice in its entirety.

/ / /

/ / /

---

[17] *See, generally*, Compl. [ECF No 1], at ¶¶ 12-19.

[18] *See* Ex. 2.

[19] *See* Ex. 3.

[20] *See id.*

[21] *See id.*

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

### C. PLAINTIFFS' ABUSE OF PROCESS CLAIM FAILS AS A MATTER OF LAW GIVEN PLAINTIFFS' OWN ALLEGED FACTS.

#### 1. Plaintiffs' Own Facts Demonstrate the Frivolity of Their Abuse of Process Claim.

"[T]he elements of an abuse of process claim are: (1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879 (2002) (footnote reference omitted). Other federal courts have expressly ruled that

> Filing of a lawsuit is a 'regular' use of process, and therefore may not on its own fulfill the requirement of an abusive act, even if the decision to sue was influenced by a wrongful motive, purpose or intent. And, although wrongful motive in the context of an abuse of process claim may be inferred from an improper act, the reverse is not true.

*Silva v. Lustig, Glaser & Wilson P.C.*, No. 15-cv-13673, 2016 WL 1301055, at * 4 (D.Mass. Apr. 1, 2016) (citing *Simon v. Navon*, 71 F.3d 9, 15-16 (1st Cir. 1995) (setting out elements of malicious prosecution and abuse of process analogous to the same claims under Nevada law); *Millennium Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010) (same).

According to Plaintiffs' own allegations, a debt was owed to RCW by Plaintiffs.[22] The filing of a complaint by Defendants RCW and Jerome Bowen to recover all contractual damages owed by Plaintiffs is the sole basis for which Plaintiffs now assert an abuse of process claim. Indeed, Plaintiffs' challenge to the amount of damages sought by Defendants under the relevant contract does not establish a "use of the legal process not proper in the regular conduct of the proceeding" or "an ulterior motive." *LaMantia*, 118 Nev. at 30, 38 P.3d at 879.

Plaintiffs' abuse of process claim must, therefore, be dismissed with prejudice on this basis as well.

///

---

[22] *See generally* Compl. [ECF No. 1], at ¶¶ 6-13.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

D.  **PLAINTIFFS' FDCPA CLAIM AND THE RELATED DTP AND ABUSE OF PROCESS CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

Plaintiffs assert claims for (1) violations of the FDCPA, (2) DTP *based on alleged violations of the FDCPA*, and (3) abuse of process *based on conduct allegedly in violation of the FDCPA*.[23] All three of these causes of action are based on alleged violations of the FDCPA, which claims are subject to a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter [the FDCPA] may be brought ... within *one year from the date on which the violation occurs*.") (emphasis added); *see also Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) (holding that the FDCPA limitations period "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action") (citation and internal quotation marks omitted).

Plaintiffs Complaint is based on what they group into three categories of conduct: so-called (1) "Collection Fee Violations," (2) "§ 1692(g) Violations," and (3) "Interest Fees Violations."[24] All such claims would have accrued, in that Plaintiffs would have known or had reason to know of the alleged injuries, long before Default Judgment was entered against them, on or about October 20, 2014. Accordingly, any and all of Plaintiffs' claims must have been brought no later than October 20, 2015.

Although Plaintiffs attempt to re-characterize their FDCPA claims to avoid the time-barred status of their various related causes of action, they are prohibited from doing so where the claims all arise from what they alleges to be FDCPA violations. *See Clark v. Musick*, 623 F.2d 89, 92 (9th Cir. 1980) (holding in a 42 U.S.C. § 1983 context that *"Inconsistency and confusion would result if the single cause of action created by Congress were fragmented in accordance with analogies drawn to rights created by state*

---

[23] *See id.*, at 4-6.

[24] *See id.*, at ¶¶ 14 & 16. Plaintiffs' civil conspiracy claim fails for other reasons, discussed below.

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

*law and the several differing periods of limitation applicable to each state-created right were applied to the single federal cause of action.*") (citation omitted) (emphasis added); *see also Vigil v. Miller*, 17 F. App'x 657, 657 (9th Cir. 2001) (noting that wrongly characterized claim was time-barred based on correct characterization).

Therefore, the Court should dismiss the Complaint in its entirety, with prejudice, based on the long-passed expiration of Plaintiffs' applicable statute of limitations.

### E. ALTERNATIVELY, IF THE COURT DECLINES TO DISMISS PLAINTIFFS' DTP CLAIM, THEN PLAINTIFFS MUST PROVIDE A MORE DEFINITE STATEMENT.

Should this Court disagree that Plaintiffs' claims are (1) time-barred, (2) prohibited by judicial estoppel given the failure to identify the claims in Plaintiffs' bankruptcy schedules, (3) prohibited by principles of claim preclusion and issue preclusion, and (4) also prohibited by the *Rooker-Feldman* Doctrine, then AcctCorp must be provided a more definite statement of Plaintiffs' DTP claim.

Plaintiffs' DTP claim "is so vague or ambiguous" that AcctCorp cannot reasonably prepare a response." FRCP 12(e). The DTP claims are wildly deficient in that they merely cite, generally, to Chapter 598 of the Nevada Revised Statutes ("NRS") as the basis for such claims. Chapter 598, however, contains ten (10) subsections that each defines a separate set of DTP. *See, generally,* NRS §§ 598.0915, 598.0916, 598.0917, 598.0918, 598.092, 598.0921, 598.0922, 598.0923, 598.0924, & 598.0925 (copies of these provisions are attached for the Court's reference and convenience as **Exhibit 7** hereto). Each of these statutory subsections further enumerates categories of conduct, some identifying as many as sixteen (16) sub-categories of violating conduct. *See id.*

Certainly, AcctCorp cannot be expected to guess regarding on which of these nearly one hundred (100) possible categories of conduct Plaintiffs are basing their claims. *See In re Zappos.com, Inc.*, No. 3:12–cv–00325, 2013 WL 4830497, at *5 (D.Nev. Sept. 9, 2013) (requiring more definite statement of plaintiff's generally alleged claims of violation of similar DTP statute of sister state); *see also TSC Research, LLC v. Bayer Chems. Corp.*, 552

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

F. Supp. 2d 534, 546 (M.D.N.C. 2008) (finding statement provided by plaintiff was insufficient because it lacked sufficient detail of as to "any non-conclusory deceptive statements which might spare this claim from dismissal"); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1015-16 (S.D. Iowa 2009) (requiring more definite statement of "strikingly conclusory" presentation of DTP claims which provided nothing more than "the general section of the relevant state statutory code containing consumer protection provisions," which Plaintiffs fail to even provide here).

Therefore, to the extent Plaintiffs' DTP claims survive any of the multitude of mandatory bases for dismissal in this matter, a more definite statement setting forth (1) under what category of DTP Plaintiffs bring the claim and (2) what facts support such claims is necessary in order for AcctCorp to reasonably prepare a response.

### F. BECAUSE PLAINTIFFS' CIVIL CONSPIRACY CLAIM CORRESPONDS TO THEIR LEGALLY UNSUSTAINABLE FDCPA ALLEGATIONS, THE CIVIL CONSPIRACY CLAIM MUST ALSO BE DISMISSED.

"An actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consol. Generator-Nev., Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998) (citations and internal quotation marks omitted). As the Nevada Supreme Court has long held, "it is necessary for the act in furtherance of the conspiracy to constitute ***an actionable tort***." *Eikelberger v. Tolotti*, 96 Nev. 525, 527, 611 P.2d 1086, 1088 (1980) (emphasis added).

Here, where Plaintiffs' non-conspiracy claims are all barred by (1) the applicable statute of limitations, (2) the principle of judicial estoppel, (3) the principles of issue and claim preclusion, and (4) the *Rooker-Feldman* Doctrine, there exists no "actionable tort" upon which Plaintiffs can maintain a conspiracy cause of action.

Accordingly, AcctCorp respectfully requests that the Court dismiss this claim with prejudice as well.

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

## V. CONCLUSION.

The statute of limitations on Plaintiffs' various claims for relief, all of which are based on violations of the FDCPA, expired long before this lawsuit was filed. Plaintiffs also failed to identify any of their instant claims, despite their knowledge of facts purportedly supporting the same, in their bankruptcy schedules, which were accepted and Plaintiffs' debts discharged, so Plaintiffs are judicially estopped from asserting any of their claims. In addition, the *Rooker-Feldman* doctrine, and principles of issue preclusion and claim preclusion further prohibit Plaintiffs from maintaining any part of their Complaint.

Therefore, AcctCorp respectfully requests that this Honorable Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.

Dated this 30th day of January, 2017.

MARQUIS AURBACH COFFING

By /s/ Jared M. Moser
Terry A. Coffing, Esq.
Nevada Bar No. 4949
Chad F. Clement, Esq.
Nevada Bar No. 12192
Jared M. Moser, Esq.
Nevada Bar No. 13003
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for Richland Holdings, Inc.*
*d/b/a AcctCorp of Southern Nevada and*
*RC Willey Financial Services*

MAC:14665-005 2998399_1 1/29/2017 3:17 PM

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 30th day of January, 2017.

☒   I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐   I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

The Law Office of Vernon Nelson
Vernon A. Nelson, Jr. Esq.
9480 S. Eastern Ave., Ste. 244
Las Vegas, NV  89123
Tel: 702-476-2500
Fax: 702-476-2788
vnelson@nelsonlawfirmlv.com
*Attorneys for Plaintiffs*

/s/ Barb Frauenfeld
an employee of Marquis Aurbach Coffing

MAC:14665-005 2998399_1 1/29/2017 3:17 PM